O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHAROAH HOFFMAN,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No. 2:16-cv-09024-KES<br><br>MEMORANDUM OPINION<br>AND ORDER |

Mr. Pharoah Hoffman ("Plaintiff") appeals the final decision of the Social Security Commissioner denying his application for supplemental security income ("SSI"). For the reasons stated below, the Commissioner's decision is AFFIRMED.

**I.**

**PROCEEDINGS**

Plaintiff is a younger individual, born on July 24, 1984. Administrative Record ("AR") 34. He received SSI benefits from age 10 or 11 until 2008 when he was incarcerated at age 24. AR 247 (mother's note), 35. His special education records from middle school and high school discuss learning disabilities and behavioral

problems. AR 260-80. Plaintiff was expelled from high school, but completed twelfth grade in 2007 with special education assistance. AR 271, 292; 317. He "did some college at AVC [Antelope Valley College]" but "[d]ropped out due to difficulty concentrating and low motivation." AR 330. He has never held a job, but spent time in prison, most recently for carjacking, a five-year term from approximately 2008 to February 2013. AR 193, 292, 330, 378; see also AR 318 (arrested 10 times). He fathered a son around the time he went to prison. AR 317.

After leaving prison, Plaintiff applied for disability benefits on February 27, 2013. AR 199. He alleged an onset date of July 25, 1994, i.e., when he started to receive SSI benefits as a child. Id. In his application, he alleged that he is unable to work because of "learning disability; cant [sic] focus; cant [sic] follow directions; gets mad easily." AR 216. He did not claim any physical impairments. As of March 2013, he was not taking medication for any mental or physical conditions. AR 238.

The administrative law judge ("ALJ") correctly considered whether he had been under a disability from the date the application was filed, February 27, 2013. AR 10, 12. The ALJ held a hearing on July 20, 2015, at which Plaintiff, who was represented by counsel, testified. AR 31-45. The ALJ issued a decision denying benefits on August 5, 2015. AR 10-19.

## II.
## STANDARD OF REVIEW

### A. Substantial Evidence and Harmless Error.

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d

1028, 1035 (9th Cir. 2007).

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

**B.  The Five-Step Evaluation Process.**

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4); Gardner v. Berryhill, 856 F.3d 652, 654 n.1 (9th Cir. 2017). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a medically determinable "severe" impairment or combination of impairments that significantly limits his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. Id. § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, then the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of

Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claimant is not disabled and the claim must be denied. Id. § 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. § 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. Id. § 416.920; Gardner, 856 F.3d at 654 n.1; Drouin, 966 F.2d at 1257.

**C.    The ALJ's Application of the Five-Step Evaluation Process.**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since applying for benefits. AR 12.

At step two, the ALJ determined that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine; degenerative joint disease of the right shoulder; schizoaffective disorder, bipolar type; and antisocial personality disorder. AR 12.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. AR 12.

At step four, the ALJ determined that despite his impairments, Plaintiff retained the residual functional capacity ("RFC") to perform "medium" exertional

work as defined in 20 C.F.R. § 416.967(c) and could "stand or walk 6 hours out of 8 hours and sit 6 hours out of 8 hours." AR 16. Regarding Plaintiff's mental impairments, the ALJ found that Plaintiff "can understand and remember tasks, can sustain concentration and persistence, can socially interact [with] the general public, coworkers and supervisors, and can adapt to workplace changes frequently enough to perform unskilled low stress jobs that would require simple instructions." Id.

At step five, relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform the jobs of hand packager, industrial cleaner, and agricultural sorter. AR 18. The ALJ therefore concluded that Plaintiff was not disabled. AR 19.

## III.

## ISSUES PRESENTED

<u>Issue One</u>: Whether the ALJ's RFC determination is supported by substantial evidence? Dkt. 20, Joint Stipulation ("JS") at 4.

<u>Issue Two</u>: Whether the ALJ properly evaluated Plaintiff's testimony concerning the limiting effects of his symptoms. Id.

## IV.

## DISCUSSION

**A.** **<u>Issue One: The ALJ's RFC Determination is Supported by Substantial Evidence.</u>**

**1.** **Rules Governing Weighing Conflicting Medical Evidence.**

A claimant's RFC is the "most [one] can still do despite [one's] limitations." 20 C.F.R. § 416.945(a)(1). "The ALJ assesses a claimant's RFC 'based on all the relevant evidence in [the] case record.'" Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing 20 C.F.R. § 416.945(a)(1)). "The RFC assessment must '[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate.'" Id. (citing Social Security

5

Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5, at *19 (S.S.A. July 2, 1996) (emphasis omitted)); see also SSR 96-8p, 1996 SSR LEXIS 5, at *14 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. § 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830 (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating

///

physician. <u>Orn</u>, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii)); <u>see also</u> 20 C.F.R. § 416.927(c).

### 2. Chronological Summary of the Medical Evidence.

- <u>1996 – 2000</u>: Childhood special education records noted various difficulties, including reading comprehension. AR 260-80.

- <u>January 2013</u>: One-page, largely illegible prison healthcare record indicated Plaintiff has a Test of Adult Basic Education ("TABE") score of 5.2, reflecting a fifth-grade reading level. AR 286.

- <u>February 2013</u>: Plaintiff applied for benefits without claiming any physical impairments. AR 216.

- <u>March 2013</u>: Plaintiff's mother completed an adult function report. AR 222-30. She indicated he talks on the phone most of the day. AR 226. She did not describe any physical impairments or indicate any exertional limits. AR 227.

- <u>May 2013</u>: Consultative examiner Dr. Isadore Wendel conducted a psychological evaluation. AR 291-95. Dr. Wendel noted that Plaintiff does not like being around others, because he believes they are talking about him or making fun of him. AR 291. Plaintiff "expresse[d] considerable resentment about being turned down unfairly, in his mind, when he has applied for jobs." AR 292. Dr. Wendel observed Plaintiff giving poor effort on tests, banging on the waiting room wall, and interrupting Dr. Wendel's interview with his mother to call the process "B.S." and insist on leaving. AR 293. Dr. Wendel ended the evaluation early, concluding that Plaintiff has poor impulse control. AR 294. Dr. Wendel ultimately found that while Plaintiff did not cooperate with the evaluation process, he likely has some cognitive impairment. <u>Id.</u> Regarding workplace aptitudes, Dr. Wendel opined that Plaintiff was only moderately limited in following simple instructions but could not interact appropriately with others. AR 295.

- <u>July 2013</u>: State agency psychologist Dr. Eugene Campbell reviewed Dr. Wendel's report. AR 52. He noted that while Dr. Wendel found a marked limitation

in social interactions, no records showed that Plaintiff behaved similarly in other situations. Id. Dr. Campbell opined that Plaintiff's social skills were only moderately limited, and that he could carry out simple instructions. AR 53-55.

- <u>September 2013</u>: State agency physician Dr. S. Gold also reviewed Plaintiff's records. AR 59-70. Dr. Gold noted that medical records from the California Department of Corrections were "minimal" with "no mention of significant mental disorder." AR 63. Plaintiff's special education records noted a "SLD," i.e., "specific learning disability," but not "MR," i.e., "mental retardation." Id. Plaintiff's prior aggressive behavior warranted "reduced co-worker and public contact," but did not preclude all social interactions. Id. Based on these findings, Dr. Gold concurred with Dr. Campbell's opinion that Plaintiff could perform simple work with limited social contacts. Id.

- <u>May-June 2015</u>: Plaintiff attended therapy and medication support sessions at Antelope Valley Mental Health. AR 326-44. Therapist Ben McKinnon recorded Plaintiff's subjective complaints and observed that he presented "with depressed mood, anxiety, and irritability/anger …. With difficulty finding employment, client's depressed mood has increased because 'nobody wants to hire someone with a lot of stuff on their record.'" AR 331. Plaintiff's treatment goal was to reduce his angry outbursts from seven days/week to three days/week. AR 333, 336. Plaintiff also saw Dr. Aakash Ahuja who prescribed Celexa. AR 317, 337, 341, 343. Plaintiff was noted as having a history of poor compliance with treatment. AR 337. None of these treating records state any formal opinions about Plaintiff's exertional or cognitive limitations.

- <u>February 2015</u>: Plaintiff underwent a computed tomography ("CT") scan of his right shoulder and back. AR 371, 372. Regarding his shoulder, the records noted a "[h]istory of multiple injuries. Dislocation." Id. The scan revealed irregularities compatible with "bony Bankart injury" and a "shallow Hill-Sachs lesion," both of which are associated with shoulder dislocation. Id. Regarding his back, the scan

8

revealed largely "normal" and "unremarkable" findings, but did show "moderate to severe" foraminal narrowing at the lowest level of Plaintiff's lumbar spine and "[d]iffuse disc bulges." AR 372.

- <u>February 2015</u>: After his CT scan, Plaintiff told Antelope Valley Community Clinic that his "pain meds [were] not working," so the clinic referred him to specialized pain management. AR 363-64.

- <u>March 2015</u>: Plaintiff was treated once at Lancaster Pain Management. AR 346-49. Plaintiff denied "anxiety, depression and sleeping difficulty." AR 346. The clinic conducted a physical examination and noted some pain with the cervical and lumbar spine, but none with the thoracic. AR 347. Plaintiff completed a range of motion ["ROM"] test for both shoulders and they were found "non-tender to palpation," although Plaintiff reported shoulder joint pain. AR 347-48. His arms and legs had normal sensation and motor strength of 4/5. AR 347. Plaintiff was prescribed medication and advised to avoid "heavy lifting or high impact activities" and perform "home exercises for the back and neck." AR 348.

- <u>April-July 2015</u>: Plaintiff had three appointment at Antelope Valley Community Clinic for various conditions unrelated to Plaintiff's mental impairments or shoulder/back pain. AR 350-62. In July 2015, Plaintiff scored "0" on depression screening. AR 350. At each appointment, Plaintiff reported recent sexual activity. AR 351, 356, 359.

- <u>May 2015</u>: Consultative examiner Dr. Leslie Roman of Sterling Healthcare conducted a psychological evaluation. AR 316. Dr. Roman noted that Plaintiff does not like being around people and has trouble concentrating. AR 318. He has a low frustration tolerance, but he was willing to cooperate when prompted to put forth his best effort. Id. Dr. Roman attempted to administer an IQ test, but noted that the result of sixty-five did not appear valid. AR 320. Dr. Roman ultimately opined that Plaintiff had the mental capacity to understand and carry out simple instructions, but was "moderately" limited in interacting with others and maintaining concentration.

AR 310, 312, 321. Plaintiff told Dr. Roman that he has a "bad right shoulder, knee surgery and disc in back." AR 317.

- July 2015: The ALJ conducted the hearing. AR 31.

### 3. The ALJ's Analysis of the Medical Evidence.

The ALJ was required to weigh the conflicting evidence and determine what limitations were caused by Plaintiff's physical and/or mental impairments versus any lack of motivation to work. The ALJ gave Dr. Roman's opinions some "weight" because they were consistent with "clinical signs, observations and other evidence obtained during the psychological evaluation." AR 15. The ALJ gave the opinions of Drs. Campbell and Gold "substantial weight" because they were "consistent with the record as a whole." Id. The ALJ gave Dr. Wendel's opinion "little weight" because it was inconsistent with the other doctors' opinions and appeared to be based on Dr. Wendel's "fear" of Plaintiff during their encounter rather than "objective evidence." Id.

Having weighed the medical evidence in this manner, the ALJ determined that Plaintiff was only mildly limited in his activities of daily living, but he had moderate difficulties with social functioning and maintaining concentration, persistence, or pace. AR 13. The ALJ found Plaintiff capable of "medium" exertional work which involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. AR 16; 20 C.F.R. § 416.967(c). Due to his mental impairments, the ALJ limited Plaintiff to "unskilled low stress jobs that would require simple instructions." AR 16.

### 4. Analysis.

The ALJs determination that Plaintiff can perform medium work is supported by substantial evidence. Plaintiff's initial application for benefits and the Adult Function Reports completed by himself and his mother did not mention any exertional limits. AR 216, 227, 236. Plaintiff's treating records discussing his back/shoulder pain advised him to avoid "heavy lifting or high impact activities,"

advice consistent with a restriction to medium work. AR 348.

The ALJs determination that Plaintiff can perform simple instructions is also supported by substantial evidence. Drs. Roman, Campbell, and Gold all opined that Plaintiff had sufficient cognitive ability to do simple work. AR 53, 63, 312. Dr. Roman supported her opinions with observations from an in-person evaluation and testing. AR 316-322. The state agency doctors, in turn, supported their opinions by a review of Plaintiffs' special education and prison medical records. See AR 52, 63. Dr. Wendel opined that Plaintiff had "moderate limitation" in his ability to carry out simple instructions, and noted that Plaintiff likely had some cognitive impairment that she could not diagnose due to Plaintiff's non-cooperation. AR 294-95. She stated Plaintiff was not able to focus in a "work-like situation," but was able to understand what was said to him. Id.

The ALJs determination that Plaintiff can socially interact with "the general public, coworkers and supervisors … enough to perform unskilled low stress jobs," AR 16, is consistent with the opinions of Drs. Roman, Campbell, and Gold, but inconsistent with the opinion of Dr. Wendel. The ALJ, however, gave a specific and legitimate reason for giving Dr. Wendel's opinion less weight, i.e., that it was inconsistent with the other medical opinions and treating records. AR 15. Indeed, those other records show that Plaintiff interacted appropriately with medical office staff when motivated to do so. See also AR 213-214 (agency staff member who helped the Plaintiff complete his application reported that he "immediately had a problem with … asking him to put away his cell phone" and "has a problem with authority," but "after he warmed up, he seemed like a really nice guy").

For all these reasons, Plaintiff has failed to show legal error in the ALJ's RFC determination.

///

///

///

**A. Issue Two: The ALJ Gave Clear and Convincing Reasons for Finding Plaintiff's Testimony Less than Fully Credible.**

**1. Rules for Evaluating the Claimant's Subjective Symptom Testimony.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d 958. In doing so, the ALJ may consider testimony from physicians "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Id. at 959. If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that

support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681.

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.[1]

---

[1] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 16, 2016). "[SSR 16-3p] eliminates use of the term 'credibility' from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character." Murphy v. Comm'r of SSA, 15-cv-126, 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, after the ALJ ruled on this case. Id. at 26 n.6. Plaintiff argues that SSR 16-3p is a "clarification of sub-regulatory policy," such that retroactive application is appropriate. JS at 15. The Commissioner responds that SSR 16-3p did not change the governing regulation and has no retroactive effect on the ALJ's decision. Id. at 18-19; n. 3. Courts in this Circuit have reached different conclusions about whether SSR 16-3p applies retroactively. This Court recently surveyed applicable case law and concluded that it did not. See Sanchez v. Colvin, 16-cv-05136-KES, 2017 U.S. Dist. LEXIS 145245, at *23 (C.D. Cal. Sep. 7, 2017). The authority Plaintiff cites in the JS—which relates to regulations, rather than SSRs—does not dictate otherwise. See JS at 15 (citing Smolen, 80 F.3d at 1281). In Sanchez, the Court also cited recent Ninth Circuit authority suggesting that SSR 16-3p is consistent with previous binding precedent. Sanchez, 2017 U.S. Dist. LEXIS 145245, at *23 (citing Trevizo v. Berryhill, 862 F.3d 987, 1000 n.5 (9th Cir. 2017), modified 871 F. 3d 664 (9th Cir. 2017)). Accordingly, it is "not clear that applying [SSR 16-3p] in this case would

## 2. The ALJ's Evaluation of Plaintiff's Testimony.

The ALJ found that Plaintiff's statements concerning "the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." AR 17. This approach, i.e., incorporating by reference "the reasons explained in [the] decision" to support a credibility determination, is problematic on review if it prevents the district court from readily ascertaining the reasons for the ALJ's conclusion. See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("To support a lack of credibility finding, the ALJ was required to point to specific facts in the record …."); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("While the ALJ's failure to link his discounting of the appellant's pain testimony to the appellant's testimony about his daily activities may seem to be a minor error, we are wary of speculating about the basis of the ALJ's conclusion ….").

Here, the ALJ did not list all the reasons for his adverse credibility determination in one section of his decision, but he articulated at least two. First, the ALJ found that Plaintiff's "treatment record does not show the claimant to be as limited as he alleged." AR 17. Second, the ALJ found that Plaintiff had made inconsistent statements about the limiting effects of his impairments. AR 14-15. This second reason was set forth in the ALJ's discussion of whether Plaintiff meets or medically equals one of the Listings. AR 14-15. The ALJ's detailed discussion in that section of the discrepancies in Plaintiff's statements to medical sources could serve no purpose other than to explain why the ALJ rejected Plaintiff's claimed limitations. No speculation is required to understand the ALJ's reasoning. Plaintiff's inconsistent statements were therefore among the reasons relied on by the ALJ to discount Plaintiff's credibility.

---

materially affect the Court's analysis." Id. at *23-24.

14

a. Inconsistency with Treatment Records.

The ALJ quoted Plaintiff's hearing testimony describing extreme physical limitations caused by his back and shoulder pain. Per Plaintiff's testimony, Plaintiff can only walk about one or two blocks, can only stand for five or ten minutes, and can only sit for about ten minutes without pain, even when taking Norco. AR 17, citing AR 39-40. He cannot lift anything with his right arm due to shoulder pain. AR 40.

The ALJ then contrasted this testimony with records from Lancaster Pain Management. AR 17, citing AR 346. Those records state that Plaintiff's right shoulder was non-tender to palpation. AR 17, citing AR 347. He had motor strength of 4/5 in all four extremities. Id. While the records document some back pain, the pain management clinic advised Plaintiff to avoid "heavy lifting or high impact activities" and to perform "home exercises for the back and neck." AR 348. Thus, the ALJ's adverse credibility determination is supported by a clear and convincing reason. See Stobie v. Berryhill, 690 F. App'x 910, 911 (9th Cir. 2017) (finding conflict between "subjective symptom testimony" and "objective medical evidence" a "specific and legitimate clear and convincing" reason for rejecting testimony).

b. Plaintiff's Inconsistent Statements.

The ALJ contrasted statements Plaintiff made to medical sources in May and June 2015 versus one month later in July 2015. AR 14-15. In May and June 2015, Plaintiff met with Los Angeles County Department of Mental Health psychotherapist Benjamin McKinnon. AR 326-40. He reported being depressed, hopeless and angry. AR 14, citing AR 326 ("Client's main complaints are of depressed mood and uncontrollable anger …."); AR 331 ("Client presents with depressed mood, anxiety, and irritability/anger …. Client frequently believes nobody cares about him or his situation …."). He also reported "no appetite" and "about 3 hours of sleep per night." AR 326.

///

15

In contrast, during a depression screening conducted by the Antelope Valley Community Clinic on July 10, 2015, Plaintiff denied feeling down, depressed, or hopeless. AR 14, citing 350. He denied tiredness, poor appetite, and "trouble concentrating on things …." AR 14-15, citing AR 350. He scored "0" on the depression screening. AR 15, citing 350. The ALJ also cited 2015 medical records in which Plaintiff denied "anxiety, depression and sleeping difficulty" and denied "any significant medical problems." AR 17, citing AR 337, 346.

Again, in evaluating credibility, the ALJ may properly consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." Smolen, 80 F.3d at 1284; see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("If a claimant … is found to have been less than candid in other aspects of his testimony, that may properly be taken into account in determining whether his claim of disabling pain should be believed."). The ALJ identified significant inconsistencies between how Plaintiff described his symptoms to different medical sources just months apart. This was a clear and convincing reason to discount Plaintiff's testimony.[2]

---

[2] There are numerous other inconsistent statements in the record that the ALJ did not expressly note. In his February 27, 2013 benefits application, Plaintiff stated under penalty of perjury that he was not on probation, because his probation had ended in 2003. AR 200. In fact, he was on probation from February 2013, through the hearing in July 2015. AR 41, 193. The record also contains conflicting statements about Plaintiff's alcohol, tobacco, and marijuana use. AR 292 (Plaintiff "insists that he does not drink or use drugs at all"); AR 346 ("Patient states that he never drinks any alcohol. Patient has never smoked in the past."); AR 351 (Plaintiff smokes 21-30 cigarettes every day, and has consumed alcohol, marijuana, and "drugs other than those for medical reasons" within the past year); AR 317-18 (Plaintiff drinks "two alcoholic beverages per week and in the past he drank every day;" he has a medical marijuana card). Plaintiff testified that he does not drive. AR 38. He indicated elsewhere he does drive. AR 234. Plaintiff testified that he has extreme exertional limits. AR 39-40. He indicated elsewhere that he has no exertional limits. AR 236.

# VII.
# CONCLUSION

Based on the foregoing, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: October 26, 2017

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE